**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

Jane Doe,

              Plaintiff

             v.

EAST STROUDSBURG
UNIVERSITY OF PENNSYLVANIA

           and
VICTOR BURNS

             Defendants.

CIV. NO.

3:22-CV-1690 ·

**JURY TRIAL DEMANDED**

**FILED**
HARRISBURG, PA

OCT 2 6 2022

PER _____
          DEPUTY CLERK

## COMPLAINT

This is a Complaint initiated by Plaintiff Jane Doe (a pseudonym), by and through her attorneys, Saltz Mongeluzzi and Bendesky, P.C., against Defendants East Stroudsburg University of Pennsylvania ("ESU") and Victor Burns ("Burns"), alleging as follows:

## I.   Statement of the Case

1.    This lawsuit is about an educational institution that had special duties and obligations to protect its students from sexual abuse and the complete and utter failure of that educational institution to fulfill such duties and obligations when one of its own residential advisors ("RA") sexually assaulted and abused another residential advisor over the course of several years.

## II.   **The Parties**

2.      Plaintiff Jane Doe ("Plaintiff") is an adult female whose identity and address are not disclosed herein because of her desire to keep confidential her identity and address because she is a victim of nonconsensual sexual contact as outlined herein. Plaintiff may be contacted through her counsel identified herein.

3.      Defendant ESU is a public university existing under the laws of the Commonwealth of Pennsylvania and is part of the Pennsylvania State System of Higher Education (hereinafter "PASSHE"). Defendant owns, operates, controls, maintains, and manages its university, offices, dormitories, and business at 200 Prospect Street, East Stroudsburg, PA 18301 and supervises administrators, employees, and staff who oversee and control students in the course of university business. ESU maintains its offices and principal place of business at this address.

4.      At all relevant times hereto, Defendant ESU acted by and through its duly authorized actual and/or apparent agents, servants, and employees, in particular, its RAs, within the course and scope of their actual and/or apparent agency and/or employment.

5.      Defendant ESU, through the above-referenced employees, agents, and servants, had the authority and responsibility to address harassment (sexual or otherwise) and to institute corrective measures. ESU had actual or constructive knowledge of harassment at ESU by Defendant Burns, but despite such

2

knowledge, failed to adequately respond to stop the harassment against Plaintiff and took affirmative steps which resulted directly in severe harassment and assaults of Plaintiff.

6.     Defendant ESU was responsible for promulgation and enforcement of all policies, customs, practices, and policies within the university and is an educational institution as defined by 20 U.S.C.A. §1681(c), Title IX, Education Amendments of 1972 ("Title IX"), which receives federal financial assistance.

7.     Defendant Burns is an adult male who resides at 707 Moosic Street, Scranton, Pennsylvania 18505.

8.     At all relevant times, Plaintiff and Burns were full-time students and RAs at ESU.

9.     In accord with the terms stated in the relevant Resident Advisor Manual, as an RA, Defendant Burns was also "an employee of [ESU] whose function [was] to help implement [ESU's] goals, policies, and philosophies." *See* 2016-2017 East Stroudsburg University Resident Manual ("Resident Manual" or "Manual"), p. 63; *see also*, pp. 23-25 (Payroll and Clearance Information).

10.    At all relevant times hereto, Defendant Burns, acted as a duly authorized actual and/or apparent agent, servant, and/or employee of Defendant ESU, and in turn, acted within the scope of his authority and employment in furtherance of the business of Defendant ESU.

11.   Defendant ESU is directly liable to Plaintiff for injuries sustained as a result of the negligence, gross negligence, outrageous conduct, and reckless misconduct, as described further herein, of persons or entities whose conduct was under its control, or right to control which conduct directly and proximately caused Plaintiff's injuries.

12.   Defendant Burns is directly liable to Plaintiff for injuries sustained because of his negligence, gross negligence, outrageous misconduct, and reckless misconduct, including, countless occasions of physical assault and rape, sexual assault, and domestic violence, as described further herein, which conduct directly and proximately caused Plaintiff's injuries.

## III.   **Jurisdiction and Venue**

13.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1441(a) as this is a civil action arising under the Constitution and laws of the United States. As set forth more particularly below, Defendant ESU is liable for having committed, *inter alia*, violations of: 1) 20 U.S.C.A. §1681(c), Title IX, Education Amendments of 1972, by acting with reckless and deliberate indifference to the risk of harm posed to Plaintiff and 2) 42 U.S.C.A. §1983, for failing to properly train and supervise its staff members to prevent the subject sexual assaults.

14.     This Court has jurisdiction in that this action involves a Federal Question.

15.     The Court also has supplemental jurisdiction over state law claims related to the federal questions posed herein pursuant to 28 U.S.C. §1367(a). These claims include various state law claims for the failure of ESU to protect Plaintiff against the sexual assaults and the harassing conduct of Defendant Burns, and that Defendant Burns is liable for his actions with respect to the sexual assaults under theories of assault and battery, intentional infliction of emotional distress, negligence, recklessness, and negligence infliction of emotional distress.

16.     Specifically, Defendants' actions and inactions described herein, and through a pattern of deliberate indifference, created and permitted a severe, pervasive, and persistent sexually hostile environment. The conduct on the part of Defendant Burns herein described, for which Defendant East Stroudsburg is vicariously and otherwise liable, would constitute an offense, or a solicitation thereto, under *inter alia,* 18 Pa. C.S.A. § 3121; 18 Pa. C.S.A. § 3124.1; 18 Pa. C.S.A.§ 2701; 18 Pa. C.S.A.§ 2702; 18 Pa. C.S.A.§ 2705; violations of Defendant East Stroudsburg's policies, procedures, handbooks, and/or other policies; and/or violations of other federal, state, and local laws.

17.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1343, which gives district courts original jurisdiction over: (a) any civil action

authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all personal within the jurisdiction of the United States; and by (b) any civil action to recover damages or secure equitable relief under any Act of Congress providing for the protection of civil rights.

18.    This matter is being brought within the statute of limitations consistent with 42 Pa. C.S.A. §5533(b) and pursuant to the laws of the Commonwealth of Pennsylvania, including 42 Pa. C.S.A. §8522(b)(10), and 42 Pa. C.S.A. §8542(b)(9).

19.    The resulting injuries to Plaintiff were caused by the negligent actions and/or omissions of the Defendants.

20.    At all times relevant herein, ESU acted through its respective agents, officers, administrators, RAs, and employees, who in turn were acting within the scope of their authority and employment in furtherance of the business of ESU.

21.    At all times relevant herein, ESU's officers, executives, directors, program administrators, senior management team, and all other individuals and/or entities responsible for the establishment, oversight, and operation of ESU's facilities and the hiring, training, supervision, and retention of ESU's employees

6

and/or staff working therein, were the agents, servants, employees and/or ostensible agents of ESU.

22.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2), as the causes of action against both Defendants related to Plaintiff arose in this judicial district, a substantial part of the event which give rise to the claims herein occurred in this district, and ESU is located in this judicial district.

23.    The operative facts underlying this lawsuit as well as the causes of action asserted against each Defendant are inextricably intertwined. As such, Defendants are directly and vicariously liable to Plaintiff for injuries and damages sustained.

## IV.    **Operative Facts**

24.    ESU wholly failed in its most basic legal and moral duties to guard Plaintiff against an individual, specifically its agent, employee, and/or servant, Defendant Burns, who consistently physically and sexually abused Plaintiff, an ESU student, on multiple occasions throughout the majority of her time at ESU.

25.    ESU failed in numerous ways including, but not limited to, properly vetting its staff and/or actual and/or apparent agents including Defendant Burns; not properly training and/or supervising its staff and/or actual and/or apparent agents; negligently retaining staff and/or actual and/or apparent agents it knew or should have known were physically and sexually abusing other students; failing

to recognize clear and obvious signs of abuse to students; failing to investigate multiple reports of concerning and/or criminal behaviors by staff and/or actual and/or apparent agents and students; and failing to have in place any legitimate measures to protect against an RA sexually and physically abusing students and committing other criminal misconduct.

26.    ESU knew or should have known of Defendant Burns's dangerous propensities, yet intentionally failed to protect Plaintiff, causing her great, significant, and irreparable harm.

### A.    *Victor Burns and ESU's Residence Life and Housing Department*

27.    Defendant Burns began attending ESU as a freshman student in the fall of 2015.

28.    In the spring of 2016, Burns joined Kappa Delta Rho Fraternity and spent the summer in ESU's "Early Start Program" to transition student athletes and foreign exchange students from high school to college as an RA.

29.    Upon information and belief, during the summer of 2016, ESU disciplined Burns for consuming alcohol with his resident students inside campus housing.

30.    Nevertheless, ESU allowed Burns to become a full-time RA in Linden Hall Dormitory beginning in the Fall of 2016.

31.    In accordance with the 2016-2017 ESU Resident Advisor Manual, the Residence Life and Housing Department, which oversees the RA Program, "support[s] the overall academic mission of [ESU] by providing and fostering an environment within residence life which is conducive to academic achievement, scholarship, and respect for the diversity and intrinsic worth of all members of [ESU's] community." *See* 2016-2017 ESU Resident Advisor Manual, p. 5.

32.    In support of that mission, the goals of the Program include, *inter alia*, to: (1) "create an environment conducive to learning;" (2) "implement and foster a comprehensive educational component that supports students by providing programming that enhances understanding of… gender… differences;" (3) "create and maintain a living community where students take responsibility for comprehending and enriching their environment, while respecting the rights and needs to others within [ESU's] community;" (4) "facilitate the adjustment and transition of new students to [ESU] through various programs;" (5) "provide a disciplinary structure that promotes and encourages student accountability and responsibility;" (6) "focus on social, emotional, mental and physical health; substance abuse; responsible sexual behavior;" (7) "provide a comprehensive training and development program for professional and para-professional staff;" and (8) "provide a ***comprehensive ongoing evaluation/assessment of the***

9

***Residence Life and Housing operating, including its personnel, programs, and procedures***". *Id*. at pp. 5-6 (emphasis added).

33.     The philosophies underlying the Program goals are mirrored in the Basic Objectives of Residence Life Staff Members. *Id*. at p. 7.

34.     Moreover, the Department as a whole, and thus the RA program, prohibits "***residence life staff members [from] engag[ing] in any activity that colludes with or perpetuates…[sexism and] discrimination.*** Further staff should challenge themselves, all students and colleagues to be open to, and to support, this philosophy." *Id*. at p. 6 (emphasis added).

35.     In this vein, ESU acknowledges that the "RA position brings with it many roles (i.e., resource person, referral agent, friend, counselor, administrator, disciplinarian, programmers, etc.), but **the basis of everything is the relationships you build with the students on a one-to-one level…** As an RA, you are a member of a team that brings with it a responsibility to other staff members and to the Residence Life program as a whole." *Id*. at p. 8 (original emphasis).

36.     The Manual also provides that RAs must be "be aware of" several facts, including that: (1) "**what [a RA] do[es] and how [an RA] do[es] it affects every other staff member.** [RAs] must be consistent in the enforcement of [ESU] policies and regulations" and (2) "that students view [RAs] as representative of the

program… [and that] [e]verything the [RA does] reflects yourself, your staff, the department, and ESU." *Id.* at p. 8 (original emphasis).

37.    The Manual also states that RAs should have "open communication" with "fellow staff and [the] supervisor." *Id*. at p. 9.

38.    The period of employment begins the "first day of RA Training and continue[s] until the final closing of the residence halls at the end of each semester." *Id*. at p. 9.

39.    Notably, the Manual lists all the RA Duties and Responsibilities, and specifically states, in all capitals, "**REMEMBER: EVEN WHEN AN RA IS NOT THE RA ON DUTY, IT IS EXPECTED THAT HE/SHE WILL ALWAYS RESPOND TO PROBLEM SITUATIONS WHEN THEY OCCUR.**" *Id*. at p. 11 (original emphasis).

40.    The Manual also contains a "Resident Advisor Contract" which requires RAs to, *inter alia*, (1) "***serve as a role model and set a good example for residents***", (2) "***report… accidents, unusual behavior, and extended absences of students to your supervisor***", (3) "respect individual privacy and confidential nature of information about individual students", (4) "***[c]omply with <u>and</u> enforce all Federal, State, and Local Laws, as well as all University regulations***". *Id*. at pp. 18-19 (emphasis added).

41.    The Resident Manual also discusses conflict resolution, ***the prevalence of sexual assault***, and what to do when a student is sexually assaulted. *Id*. at pp. 27-42.

42.    Specifically, the Resident Manual requires RAs as follows: "[a]s a student leader, make sure you help students learn these important life messages: 1. Always Get Consent…[and] 2. Be an *Active Bystander*." *Id*. at pp. 40-41. An Active Bystander is defined as "a person who observes a conflict or unacceptable behavior. It might be something serious or minor, one time or repeated, but the bystander knows that the behavior is destructive or likely to make a bad situation worse and takes the steps that can make a difference to prevent an unwanted situation from happening." *Id.* at pp. 41.

43.    Moreover, all RAs are expected to "enforce" the Residence Life Information and Policies booklet and the Student Handbook."

44.    The Resident Advisor Manual further provides that "[ESU] will take action to address acts of sex-based discrimination, harassment, or gender violence (collectively referred to as sexual misconduct) by educating the members of its community, identifying clear reporting requirements, investigating all alleged violations of policy, and as appropriate, disciplining members of the community found in violation." *See* Resident Advisors Manual, p. 39.

45.     The Resident Advisor Manual then provides that "[a]ll employees of ESU are considered 'responsible employees.' This means that if an employee becomes aware of any violation of Title IX, he/she must report the incident." *Id.*

46.     Importantly, the definition for sexual misconduct also encompasses criminal conduct under Pennsylvania and/or federal law, such as dating violence, domestic violence, and sexual assault, all of which is defined in ESU's Sexual Misconduct Policy.

### B.     *Plaintiff's Life at ESU & The March 30, 2018 Attack*

47.     In the Fall 2016, when Defendant Burns was a sophomore and made RA, Plaintiff began attending ESU as a freshman student pursuing a nursing degree.

48.     Plaintiff, a resident in Linden Hall, met Defendant Burns, who was an RA on another floor in the same dormitory.

49.     At this time, Plaintiff was a minor, aged seventeen years young.

50.     Defendant Burns expressed interest in Plaintiff and the two became romantically involved.

51.     At this time, Plaintiff did not know that the period of the next two years would be full of domestic violence and assaults taking place on school property and perpetrated by Defendant Burns, who, at all relevant times, was an RA at the university.

52.     Shortly after Plaintiff and Defendant Burns began dating, Defendant Burns began presenting signs of anger and abuse, all of which many individuals at the university were or should have been well aware.

53.     Upon information and belief, Ly'Esha Flemming, who was the Residence Hall Director (hereinafter "RD") in 2016, and agent, and employee of the school, knew or should have known that Burns was dating a freshman woman while he was an RA in Linden Hall.

54.     At a certain point in the relationship between Defendant Burns and Plaintiff, Defendant Burns displayed extremely violent behaviors including:

  a.  Physically abusing Plaintiff;
  b.  Aggressively throwing items around when in a room with Plaintiff, undoubtedly causing loud noise and great commotion;
  c.  Emotionally abusing Plaintiff; and
  d.  Verbally abusing Plaintiff.

55.     These abusive behaviors progressively worsened.

56.     In the Spring of 2017, Plaintiff joined Lambda Iota Sorority.

57.     Defendant Burns was a member of Kappa Delta Rho Fraternity.

58.     Through the co-mingling of Greek Life at ESU, many individuals witnessed Defendant Burns physically assault Plaintiff on multiple occasions.

59.     In one instance, Defendant Burns put his hand on the back of Plaintiff's neck and shoved her up a staircase in front of people while screaming at her.

60.     Additionally, it was a common occurrence for Defendant Burns to act violently, with misconduct including, punching windows, flipping tables, and ripping his shirt off while intoxicated and clearly aggravated.

61.     On one occasion, Defendant Burns relayed to Plaintiff that he did not know how to socially drink and would just "chug a bottle" and become intoxicated and forgetful.

62.     Upon information and belief, the RD knew, or at least should have known, about Defendant Burns's misconduct and/or that there were domestic violence incidents between Plaintiff and Defendant Burns.

63.     Upon information and belief, Kappa Delta Rho Fraternity often threw parties and provided alcohol to underage students.

64.     These parties became known as a "hunting ground" for younger students.

65.     Plaintiff and Defendant Burns also frequently argued.

66.     Plaintiff and Defendant Burns eventually terminated their relationship.

67.     Nevertheless, Defendant Burns relentlessly continued to pursue Plaintiff.

68.     Throughout that time, Defendant Burns pervasively pursued Plaintiff in a harassing manner, in direct violation of ESU rules and/or federal, state, and local laws.

69.     In the fall of 2017, Plaintiff became an RA in Linden Hall.

70.     Shortly thereafter, Plaintiff and Burns began to date again.

71.     On March 30, 2018, the inevitable consequence of ongoing severe dating and domestic violence occurred inside Linden Hall.

72.     In the early morning hours of March 30, 2018, Defendant Burns picked up Plaintiff from a party.

73.     Plaintiff and Defendant Burns arrived at Linden Hall and went to Defendant Burns's dorm room.

74.     Plaintiff was extremely emotional, intoxicated, and agitated with Defendant Burns.

75.     Defendant Burns admitted that he was aware that Plaintiff was heavily intoxicated.

76.     Once they entered his room, Defendant Burns assaulted Plaintiff.

77.     After Defendant Burns assaulted Plaintiff, the two got into a verbal altercation which soon led to Defendant Burns aggressively screaming in her face and forcibly pushing her to the ground.

78.     As Plaintiff lay on the floor, defenseless, Defendant Burns quickly straddled Plaintiff, put his hands around her neck, and pinned her arms to the ground.

79.     Plaintiff attempted to squirm out of Defendant Burns's tight grip and scream so that he would release her.

80.     During this physical altercation, Plaintiff's clothing and appearance became quite disheveled and she was injured.

 

81.     Plaintiff was only released when Burns got up to answer the knock at his door.

82.     Importantly, RA Makenely Jean (hereinafter "RA Jean") knocked a few times, and multiple times identified himself, demanding that Defendant Burns open the door.

83.     When Defendant Burns *finally* answered the door, Plaintiff saw that RA Jean was the one who knocked at the door.

84.     Upon information and belief, RA Jean knocked in response to overhearing the loud and obvious altercation between Plaintiff and Defendant Burns.

85.     Defendant Burns told RA Jean that he was having a loud conversation with someone over the telephone.

86.     As required by the Resident Advisor Manual, "[i]f an RA suspects a violation that includes violations of local, state, and federal law, they must contact University Police before approaching the residents about the violation." *See* Resident Advisor Manual, p. 68.

87.     Moreover, "[i]n the event that the RA is aware of or *suspects* a violation of Residence Hall Regulations or of the Student Code in a particular room, the following procedure should be followed: [(1)] The Resident Advisor should knock, identify him/herself, ***and request to be admitted***. [(2)] Whenever possible, the RA should get another staff member to accompany him/her. [(3)] ***If the residents open their door, the Resident Advisor should conduct a visual inspection*** … [(4)] A written Incident Report should be submitted to the building supervisor and [ESU] Police should be notified immediately." *Id*. at p. 68 (emphasis added).

88.     Upon information and belief, none of this was done.

18

89.     When RA Jean inquired further, Defendant Burns dismissed RA Jean stating that the situation was under control and that no further problems would occur.

90.     RA Jean did no visual inspection, as he was obligated to do.

91.     After RA Jean left, Defendant Burns expressed his anger to Plaintiff that an RA got involved due to Plaintiff's behavior and demanded that she leave his dorm, threatening that he would have her removed if she did not leave immediately.

92.     Plaintiff was extremely emotional and began text messaging her neighbor, who also heard screaming.

93.     Plaintiff left Defendant Burns's dorm room, returned to her own, and locked the door.

94.     Immediately, Defendant Burns began sending Plaintiff text messages, demanding that she return.

95.     Plaintiff did not return.

96.     Defendant Burns then went to Plaintiff's room and entered using the master key which he only had access to because of his role as a university RA.

97.     Importantly, upon information and belief, to get the master key, Defendant Burns would have needed to go downstairs to the RA office, use his

own key to retrieve the master key, then go upstairs to enter Plaintiff's locked dorm room without her permission.

98.   Importantly, RAs are only permitted to use master keys under limited circumstances, none of which apply here. *See* Resident Manual, pp. 68-69.

99.   Once Defendant Burns entered Plaintiff's room, he began yelling at her and ripped off Plaintiff's shirt.

100.   Given Defendant Burns' prior conduct, both that evening and, in the past, Plaintiff was horrified.

101.   Defendant Burns then picked her up, bent her over, and raped her while calling her a "whore," as well as using other disparaging names, stating that "she should be used to being treated this way."

102.   After raping Plaintiff, Defendant Burns grabbed Plaintiff's phone and began looking at Plaintiff's text messages.

103.   Full of rage and jealousy, Defendant Burns poured an energy drink over Plaintiff's coffee table, smashed the can, and angrily left her room.

104.   Shortly thereafter, Defendant Burns angrily text messaged Plaintiff engaging in another course of harassment towards Plaintiff.

105.   After Plaintiff did not respond, he attempted to call her several times, further harassing her.

106.   Throughout the night, Defendant Burns came to Plaintiff's door several times, banged on her door, and called her.

107.   Plaintiff temporarily left Linden Hall to stay with her neighbor Nicole West. Knowing this was the case, Burns verbally threatened West and was then again permitted to use his position as an RA to violate Plaintiff's privacy.

108.   He asked RA Jean and his friend Gary to accompany him to Plaintiff's room under the false pretense that that there were people in the room that should not be. RA Burns asked RA Jean to open the door in order to inspect Plaintiff's room while she was staying with Ms. West out of fear for her safety.

109.   The same day, Plaintiff reported the incident to RD who told Plaintiff that she needed to report the Incident to the ESU Police Department, which she did. A no contact directive was put in place.

110.   Defendant Burns was temporarily suspended and moved out of Linden Hall.

111.   He was also _**finally**_ removed as an RA.

112.   Initially, Defendant Burns was moved to a building far away from Plaintiff.

113.   Soon thereafter, however, Defendant, _**upon his request**_, was permitted to move into the Kappa Delta Rho Fraternity house, which was directly across the street from Linden Hall.

114.   Plaintiff still felt extremely unsafe, as she felt Defendant Burns was watching her from across the street.

115.   She was also extremely terrified to leave her room and nervous that Defendant Burns was going to come after her.

116.   Occasionally, the ESU police had to escort Plaintiff to and from Linden Hall.

117.   On April 5, 2018, Defendant Burns was arrested for assaulting Plaintiff.

118.   However, he was released on bail and returned back to campus.

119.   After Plaintiff reported Defendant Burns, she faced severe harassment from his fraternity brothers and reported this harassment to ESU.

120.   The harassment included Snapchat virtual posts containing the hashtag "#JusticeforVic," tweets directed at the President of ESU, and physical posters that eventually made their way to Plaintiff. Many of them were hung throughout Linden Hall, where she resided and was an RA.








121.  Defendant Burns also retained possession of Plaintiff's computer, intentionally controlling which music Plaintiff was listening to on her Spotify, thereby furthering the harassment. Plaintiff was extremely uncomfortable that Defendant Burns had access to this account.

122.   ESU and ESU Police, however, permitted Defendant Burns to retain ownership of Plaintiff's laptop, despite it belonging to Plaintiff *and* despite them being aware that he was using it as a tool by which to retaliate against Plaintiff for reporting him and to further harass her.

123.   On April 14, 2018, Defendant Burns further harassed Plaintiff when they were at the same establishment that many ESU students frequented.

124.   While there, Defendant Burns stared at Plaintiff, smirked, and intentionally walked past her several times.

125.   Although Plaintiff contacted the ESU police, she was erroneously told that these actions did not constitute a violation and was advised to make a contempt of court statement or seek alternative methods of assistance.

126.   On May 1, 2018, Defendant Burns again violated the No Contact directive issued to him by ESU on March 30, 2018, by attempting to call Plaintiff. It was only at that point that Defendant Burns was placed on interim suspension pending an investigation of Plaintiff's claims of sex-based discrimination and harassment and *finally* forced to evacuate his residence that day.

127.   During Defendant Burns's interim suspension, he was banned from campus, but was made academic accommodations to complete his coursework.

128.   Defendant Burns was also arrested two more times for similar incidents unrelated to Plaintiff during the pendency of ESU's investigation.

129.   First, upon information and belief, Defendant Burns was arrested a few weeks after his March 2018 attack on Plaintiff, for refusing to leave property after being asked to leave by the police.

130.   Second, upon information and belief, Defendant Burns was detained at Lackawanna County Prison on June 29, 2018, for simple assault, reckless endangerment of another person, and harassment against his own mother and sister at their home.

### C.   *The Title IX Investigation*

131.   As a result of RA Burns criminal misconduct, Plaintiff filed a Title IX Report naming Burns as the Respondent on the same day she was raped and brutally attacked by Burns.

132.   Her claim was acknowledged by letter dated April 20, 2018.

133.   Over two months after the March 30, 2018 rape, on June 1, 2018, Plaintiff was advised that ESU was in need of additional time to complete its investigation. Over an additional month later, on July 5, 2018, Plaintiff received notice from of the first Formal Sexual Misconduct Hearing scheduled for July 17, 2018.

134.   On July 17, 2018, Defendant ESU held a Sexual Misconduct Hearing and the university found him responsible for the following violations of the Student Code of Conduct:

25

a) **Sexual Misconduct;**
b) Assault and/or battery upon another person or the threat thereof;
c) Unauthorized entry or exit and/or use of campus facilities;
d) Citations or convictions or violations of local, state, or federal law;
e) Forgery, alteration, misuse or falsification of university forms, records, or systems; and
f) **Knowingly providing false or misleading information to a university official.**

135.   ESU's Sexual Misconduct Hearing Panel imposed the following

sanctions on Burns:

(1) Suspension until the end of *Fall 2019* semester (through 12/13/2019);
(2) Permanent removal as an RA and from campus housing; and
(3) Successful participation in a sexual misconduct counseling program and the completion of a CAPS counseling session.

136.   Defendant Burns appealed the above referenced sanctions and Plaintiff

was informed on August 10, 2018 that the appeal was granted. Consequently, ESU

held a Student Faculty Conduct Board hearing on September 4, 2018.

137.   Prior to the September 4, 2018 appeal hearing, ESU failed to adequately

inform Plaintiff about the appellate hearing procedures and only informed her of

those procedures after she repeated requests for assistance.

138.   During the hearing, RA Burns and his father were present. RA Burns

sat across from Plaintiff and was permitted to question her even though his questions

were not sent to or preapproved by the University in advance.

139.   RA Burns' father was also permitted to provide his own opinion

statement at the conclusion of the hearing.

140.  After being questioned by Burns directly during the appeal hearing, Plaintiff experienced a panic attack and had to leave the room. She returned to find that the hearing had resumed prior to her return and, during this time, RA Burns was raising new information despite the fact that no new evidence was supposed to have been introduced.

141.  Following the appeal hearing, Defendant Burns was ultimately found responsible for the following violations of the Student Code of Conduct:

   a. Forgery, alteration, misuse or falsification of university forms, records, or systems;
   b. Assault and/or battery upon another person or the threat thereof;
   c. Unauthorized entry or exit and/or use of campus facilities; and
   d. Citations or convictions or violations of local, state, or federal law.

142.  ESU specifically did not find Defendant Burns responsible for sexual misconduct, sexual harassment, gender discrimination, or knowingly providing false or misleading information to a university official despite such conduct on his part being glaringly obvious.

143.  As a result of the hearing, Defendant Burns was suspended for the Fall 2018 semester but was permitted to re-enroll for the Spring 2018 semester if he completed an assigned anger management assessment and did not further violate the Student Code of Conduct or state laws.

144. Extremely concerned for her safety, Plaintiff appealed and on September 28, 2018, Defendant ESU reevaluated Defendant Burn's original

27

sanctions, including suspending him until Spring 2019, permitting his reenrollment in Fall of 2019.

145. ESU's decision to permit RA Burns to reenroll in the Fall of 2019 with anger management being completed by November 9, 2018 was final.

146. Upon reenrollment, Defendant Burns was supposed to be placed on deferred suspension until May 2020.

147. He was also not supposed to have any contact with Plaintiff.

148. This is because, according to Defendant ESU, Defendant "Burns has shown a pattern of unacceptable behavior which highlights concern for the complainant and the campus community." *See* ESU letter dated 9/28/2018.

149. Due to ESU's excessive, unnecessary, and delayed investigation, Plaintiff missed her opportunity to transfer to another university before the start of her junior year.

150. Plaintiff was forced to return to ESU for the Fall 2018 semester where she learned that ESU permitted Defendant Burns to live just a block away from her.

151. ESU continued to allow Defendant Burns to attend fraternity parties despite his suspension conditions stating that he could not live in campus-affiliated housing or attend fraternity events.

152. Not only did ESU fail to protect Plaintiff, an ESU student, Defendant ESU gave Defendant Burns nothing more than a slap on the wrist in comparison to

the horrid attacks he, as a university employee, agent, and/or servant, took against Plaintiff consistently for two years.

153. When confronted by Plaintiff, ESU claimed that the fraternity house was not "officially" part of the campus although ESU mentions the fraternity on its website, which effectively affiliates the school with the fraternity.

154. ESU also told *Plaintiff* to move residence halls.

155. Plaintiff spent the entire Fall 2018 semester terrified that she would see her attacker.

156. She began suffering from Post-Traumatic Stress Disorder ("PTSD") and frequent nightmares about her attack.

157. Plaintiff's grades also fell, and she struggled with many of her classes.

158. Plaintiff was forced to resort to treating with anxiety medication to get her through each day.

159. The thought that her attacker would officially re-enroll at ESU the following spring haunted her daily.

160. In December 2018, Plaintiff could not bear this anxiety any longer and left ESU.

161. Leaving ESU was the only decision Plaintiff could make after ESU completely failed to address this matter in an appropriate, lawful, effective, or timely way.

162. Leaving a university she previously loved as well as the professors she had made connections with, her nursing program which she excelled at, her job at a local hospital, and all of her sorority sisters and friends, turned Plaintiff's life upside down, on top of the fact that she has suffered irreparable damage and harm at the intentional, negligent, and tortious acts and omissions of Defendant Burns and ESU.

163. Defendant Burns's dangerous propensities, misconduct, university rule violations, and misbehavior were known to ESU, and serious action was not taken to protect Plaintiff and afford her adequate, fair, and equal opportunities to access ESU's educational programs and activities and obtain ESU's educational enrichment.

164. Plaintiff complained to ESU on several occasions and despite Defendant Burns assaulting two more women and being arrested twice for similar behaviors reported by Plaintiff, ESU elected to ignore these allegations and enable Defendant Burns to the detriment, harm, and retaliation of Plaintiff.

165. There were numerous instances where Defendant Burns was directly observed acting inappropriately with aggressive behaviors, notably while intoxicated, yet nothing was done.

166. ESU failed to stop him and failed to remove him from the esteemed position of RA, a position of authority where he had access to master keys.

167. Defendant Burns also repeatedly displayed aggressions towards Plaintiff around others and many were aware that Burns was violent towards Plaintiff.

168. Defendant Burns was also arrested and charged for the criminal misconduct he committed against Plaintiff, in addition to the fact that upon information and belief, he was previously disciplined by ESU for violating university rules.

169. Once reported, ESU was aware of Defendant Burns's abusive misconduct, yet failed to address it to keep Plaintiff and the other students in the community, safe, secure, and protected in a timely or adequate manner. Instead, Defendant Burns was able to go on assaulting other women, attending parties with underage students, living in close proximity to Plaintiff, preventing Plaintiff access to equal educational opportunities, and more.

170. Defendant Burns, who has since been prosecuted and criminally charged by the Lackawanna County District Attorney related to the March 30, 2018 attack, was, at all relevant times, acting within the course and scope of his employment and/or agency as an RA at ESU when he obviously beat, raped, assaulted, broke into the private room of, and engaged in a continuing course of criminal misconduct against Plaintiff.

171. Defendant Burns engaged in a carefully orchestrated yet easily discernable plot to control Plaintiff through a manipulative relationship so that he could force sexual activity upon Plaintiff without her consent.

172. ESU's continued failure to act, when it knew or should have known of Plaintiff's distress, harm, and harm due to her various cries for help and Defendant Burns's prior disciplinary history as an RA, allowed Defendant Burns to continue his abuse and manipulation of Plaintiff, resulting in her severe and permanent injuries.

173. At all relevant times, Defendant Burns was a servant or agent of Defendant ESU.

174. Before and after these events, ESU knew or had reason to know that Defendant Burns posed a risk to female ESU students and other females, yet permitted him to attend school, serve as an RA, and live on campus and enjoy all the privileges associated therewith.

175. The indifference of ESU to the risks posed by Defendant Burns and ESU's affirmative acts described herein created and/or permitted the opportunity for Defendant Burns's rape and assaults of Plaintiff thereby creating a dangerous and sexually hostile educational environment.

176. Accordingly, ESU is also liable vicariously and derivatively for the acts of Defendant Burns under theories of respondeat superior, master-servant, agency, and/or right of control.

177. Defendant ESU, through its agents, knew or should have known in the exercise of reasonable care and supervision, that Defendant Burns was engaging in the abuse of Plaintiff and failed to intervene to either prevent further abuse, prevent his access to Plaintiff and other underage women, or expel him from the university completely.

178. At all relevant times hereto, Defendant ESU was acting by and through its employees, servants, and agents, in the operation of ESU and the hiring, admitting, assigning, retaining, and supervising of students and staff, in particular, RAs.

179. Accordingly, Defendant ESU is vicariously and derivatively liable for the negligent acts and omissions of these employees, servants, and agents while engaged in the operation of ESU and the hiring, admitting, assigning, retaining, and supervising of students and RAs, including Defendant Burns, under theories of respondeat superior master-servant, agency, and/or right of control.

### D.    *Prior Instances of Abuse at ESU*

180. Tragically, there exists a history and high incidence illustrating an uncorrected pattern of sexual abuse of Defendant ESU's students while on Defendant ESU's campus.

181. By way of example, Defendant ESU was sued for failing to protect students from sexual assault and sexual harassment by Issac Sanders ("Sanders"), the Vice-President for Advancement at the university and the CEO of the ESU Foundation in violation of Title IX. *See Bernard v. ESU Univ.*, 700 Fed.Appx. 159, 161 (3d Cir. 2017) (Although the court entered summary judgment on behalf of ESU, the recent lawsuit establishes a pattern of misconduct by the university).

182. The misconduct occurred around 2007 and involved about a half-dozen male plaintiffs. MICHAEL RUBINKAM, REPORT ON EDU ABUSE KEPT FROM PUBLIC, (2018), https://www.tnonline.com/20181002/report-on-esu-abuse-kept-from public/.

183. Sanders was accused of being a "predator who targeted emotionally fragile black men from broken homes because he believed they'd be less likely to report the abuse." *Id.*

184. According to state investigators, Sanders "exercised exceedingly poor judgment toward" students and mishandled donor funds. *Id.*

185. Specifically, the court set forth statements from Charmaine Clowney, an official in charge of university harassment, who expressed that the ESU anti-harassment policy was "weak and ineffective" in the words of the policies of the fourteen state universities in PASSHE. *Bernard*, 700 Fed.Appx. at 161.

186. Disturbingly, given what happened to Plaintiff, it is clear that despite notice, these policies are still "weak and ineffective."

187. In fact, in September 2016, a young female freshman student was restrained and sexually abused while on Defendant ESU's campus. YAASMEEN PIPER, SURVIVOR OPENS UP ABOUT ASSAULT WITH EMOTIONAL FACEBOOK POST, (2019), http://thestroudcourier.com/2019/04/18/survivor-opens-up-about-assault-with-emotional-facebook-post/.

188. Upon information and belief, the perpetrating student retrained this young female student while forcefully grabbing her breast and rubbing his penis on her. *Id.*

189. At no time did this young female student consent to this sexually explicit and criminal misconduct. *Id.*

190. The offender was charged by law enforcement with indecent assault, harassment, and unlawful restraint and sentencing by the court. *Id.*

191. ESU's Student Conduct merely ordered the offender to write an apology letter and to go through deferred suspension, which allows the student to be on campus. *Id*.

192. ESU's pattern of permitting sexual offenders and abusers on campus was also seen with *another* young student who spoke out about ESU's failure to condemn the individual who raped her, stating that ESU has propensity to "sweep things under the rug." *Id*.

193. Specifically, that student said that "sexual assault… impedes women's right to an equal education… why does [ESU] sweep things under the rug?" *Id*.

194. Upon information and belief, that student was raped in October of 2018. *Id*.

195. Moreover, a year later, in October 2019, another student was sexually assaulted on campus by an ESU student. BRIAN MYSZKOWSKI, ESU STUDENT ARRAIGNED ON RAPE CHARGES, (2019), https://www.poconorecord.com/news/20191029/esu-student-arraigned-on-rape-charges.

196. This pattern illustrates the pervasive sexual misconduct and culture ESU has allowed to thrive uncorrected, and also evidences the fact that ESU knew or should have known that sexual abuse and violence was likely to occur to Plaintiff.

197. Plaintiff's physical, psychological, and emotional injuries were proximately caused by the negligence, carelessness, recklessness, and other tortious and outrageous acts or omissions of Defendants ESU and Burns as set forth in this Complaint.

## COUNT I
## Violations Pursuant to 20 U.S.C.A. §1681(c), Title IX, Education Amendments of 1972
## Plaintiff v. East Stroudsburg University of Pennsylvania

198. Plaintiff incorporates herein by reference all paragraphs of this Complaint as if fully set forth hereinafter.

199. Defendant ESU's violations of the requirements of Title IX include but are not limited to the following acts and omissions, all of which were conducted and/or failed to be conducted in reckless and deliberate indifference to the risk of harm posted to Plaintiff:

   a. Accepting and/or permitting the continued enrollment and employment as an RA by Defendant Burns at a time when ESU knew that he had a history of domestic violence and abuse as well as underage and excessive drinking;

   b. Failing to take immediate and prompt corrective actions to remedy the know harassment by Defendant Burns at ESU;

   c. Actively disregarding known sexual harassment committed in the past by Defendant Burns;

   d. Taking steps that were known or which should have been known to be ineffectual in eliminating Defendant Burns's inappropriate conduct and excessive and/or underage drinking;

e.  Failing to adopt and publish appropriate grievance procedures for the prompt and equitable resolution of sexual harassment complaints;

f.  Discouraging students, especially RAs from reporting sexual assaults committed by other RAs at ESU;

g.  Failing to disseminate, educate, make known, implement, and enforce an appropriate policy against sexual harassment;

h.  Failing to conduct a reasonably diligent inquiry regarding Defendant Burns's past conduct and history of sexual harassment and abuse;

i.  Failing to supervise Defendant Burns when ESU knew of his past inappropriate and lewd behavior;

j.  Ratifying and accepting the past inappropriate actions of Defendant Burn;

k.  Failing to have in place a "zero tolerance" policy at ESU;

l.  Failing to give adequate training to staff members regarding Title IX requirements to protect against the sexual harassment of students;

m.  Improperly investigating allegations of sexual violation(s) committed in the past by Defendant Burns;

n.  Creating, through inaction and through affirmative acts described herein, a sexually hostile educational environment in which allegations of sexual harassment and misconduct is not handled appropriately, thus exposing female students to the risks of assault and sexual harassment;

o.  Permitting the consumption of alcohol upon its property by minors under its supervision and control and by Defendant Burns who had a tendency to engage in excessive drinking coupled with inappropriate and sexually abusive behavior.

200. ESU's actions altered the conditions of Plaintiff's educational environment, denied her accommodations, advantages, facilities, and/or privileges associated with her attendance at ESU, left her vulnerable to further harassment, and resulted in her withdraw from classes at ESU in December 2018.

201. As a direct and proximate result of Defendant ESU's conduct described herein, Plaintiff was caused to suffer and will continue to suffer emotional and physical injuries, including but not limited to abdominal pain, vaginal pain, sleep disturbance, fatigue, depression, anxiety, poor concentration, dizziness, sweating, racing heart, shock, PTSD, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

## COUNT II
### Civil Rights Violations Pursuant to 42 U.S.C.A. §1983
### Substantive Due Process & Failure to Train & Supervise State Created Danger Claims
### Plaintiff v. Defendant East Stroudsburg University of Pennsylvania

202. Plaintiff incorporates herein by reference all paragraphs of this Complaint as if fully set forth hereinafter.

203. Plaintiff states a claim against ESU for violation of her civil rights pursuant to 42 U.S.C.A. §1983 for the substantive due process violation of Plaintiff's right to bodily integrity without state interference based upon the state's actions for

creating a danger.

204. Defendant ESU acted under color of state law when engaging in the conduct described throughout this Complaint.

205. The harm Plaintiff endured was foreseeable and a direct result of ESU's actions, as described in detail above, because ESU had actual knowledge and/or awareness of the risk of the inappropriate sexual conduct committed in the past by Defendant Burns, such that Defendant was on notice that acting affirmatively, in the ways described above, would place Plaintiff in direct harm due to the persistent sexual harassment and outrageous conduct committed by Burns.

206. Plaintiff, a young female student at ESU and fellow RA, was a foreseeable victim of the danger created by ESU and ESU's conduct was not directed to the public at large.

207. ESU used its authority in a way that created danger to Plaintiff and made her more vulnerable to danger and harm by affirmatively returning Defendant Burns to classes; residing in the on-campus apartment without any oversight, supervision, or restrictions despite ESU's knowledge of the risk of harm to female students and Plaintiff and for all other reasons outlined herein. ESU created the opportunity for sexual assaults to occur through its affirmative actions.

208. ESU acted with deliberate indifference and conscious disregard to a known risk of sexual harassment and/or sexual misconduct by Defendant Burns such

that the actions and failures of ESU shock the conscious. ESU willingly ignored known dangers presented by Defendant Burns.

209. ESU's actions created the danger of ongoing sexual harassment and assault of females; rendered Plaintiff substantially more vulnerable than had ESU not acted at all; and/or increased the risk of harm to Plaintiff.

210. ESU's actions described herein affirmatively exposed Plaintiff to the harm and danger presented by Defendant Burns.

211. Additionally, ESU failed to train and supervise its staff members in the appropriate reporting and handling of sexual misconduct allegations. ESU also failed to properly supervise Defendant Burns.

212. ESU was deliberately indifferent and reckless with respect to the violation of Plaintiff's constitutional rights. Its failures were the moving force behind the actions of Defendant Burns resulting in Plaintiff's injuries and damages.

213. As a direct and proximate result of ESU's conduct described herein, Plaintiff was caused to suffer emotional and physical injuries and symptoms, including, but not limited to, abdominal and vaginal pain, sleep disturbance, fatigue, depression, anxiety, PTSD, poor concentration, dizziness, sweating, racing heart, embarrassment, and humiliation, and has incurred and/or will likely incur future expenses for medical and psychological treatment.

## COUNT III
## NEGLIGENCE
### Plaintiff v. Defendants

214.  Plaintiff incorporates herein by reference all paragraphs of this Complaint the same as if fully set forth hereinafter.

215.  At all relevant times, Defendant ESU owed a duty to maintain a safe school environment for the students attending ESU, specifically Plaintiff.

216.  At all relevant times, Defendants had a duty to protect and safeguard Plaintiff from harm and danger.

217.  At all relevant times, Defendant ESU had a duty to ensure that its agents were not physically and sexually abusing students and, specifically, that its RAs were not taking advantage of residents, unlawfully using master keys, and sexually abusing other students, like Plaintiff.

218.  At all relevant times, Defendants had a duty to provide Plaintiff with a safe and fair educational environment.

219.  Defendant Burns engaged in unpermitted, harmful, and offensive sexual conduct and contact upon the person of Plaintiff in violation of Pennsylvania State law. Said conduct was undertaken while Defendant Burns was an employee and agent of Defendant ESU, while in the course and scope of employment with Defendant, and/or was ratified by Defendant.

220.  At all relevant times, Defendant ESU knew or should have known, or

was otherwise on notice of the fact that its agent, employee, servant and/or staff member Defendant Burns was unlawfully sexually, physically, psychologically, and emotionally abusing Plaintiff and caused and posed an increased risk of harm to Plaintiff.

221.   Defendant ESU knew, had reason to know, or was otherwise on notice of the unlawful and/or violative misconduct of Defendant Burns and failed to protect the safety of students at the university, including Plaintiff.

222.   Defendant ESU failed to take reasonable steps and failed to implement reasonable safeguards to prevent acts of unlawful sexual abuse and to prevent or avoid placement of Plaintiff in functions or environments in which she would be endangered, harassed, abused and/or subjected to increased risk of harm.

223.   Defendant ESU also failed to prevent or avoid placing Defendant Burns in functions or environments in which contact with minor students was an inherent part of those functions or environments.

224.   Specifically, Defendant ESU granted Defendant Burns the privilege of becoming an RA even after violating ESU rules and policies.

225.   Additionally, it is believed and therefore averred that the two other RAs, Ms. Flemming and Mr. Jean, knew or had reason to know that Defendant Burns was abusing Plaintiff. Mr. Jean came to Defendant Burns's dorm room and did not attempt to visually inspect, prevent, or stop any abuse despite hearing the

yelling and loud altercation between Defendant Burns and Plaintiff that occurred on March 30, 2018.

226. Moreover, given the pervasiveness of the abuse, it is believed that all the RA's in Linden Hall knew or should have known about the abuse.

227. Further, the incidents of abuse by Defendant Burns were neither isolated nor unusual.

228. As in the past, Defendant ESU failed to adequately reprimand, punish, report, or otherwise sanction Defendant Burns, who it knew or had reason to know was a danger and/or poor influence on other students.

229. Defendant ESU's knowing acquiescence and silence with respect to the known, or reasonably knowable, activities of Defendant Burns constituted a course of conduct through which acts of sexual violence and mental torment and the violation of the sanctity of students, like Plaintiff, were condoned, approved, and effectively authorized.

230. Through its failure to timely reprimand and appropriately sanction the acts referenced above, and for all of the other reasons set forth herein including, without limitation, its failure to take the steps necessary to prevent the occurrence of such reprehensible acts, Defendant ESU ratified said actions and, accordingly, is directly and/or vicariously liable for the actions of its individual agents, including Defendant Burns.

44

231. ESU undertook gratuitously or for consideration, to render certain services and assumed certain duties to Plaintiff.

232. ESU failed to exercise reasonable care in performing the legal, moral, and ethical services, duties, and obligations, they owed to Plaintiff, causing harm to Plaintiff.

233. At all relevant times herein, it was the policy and procedure of ESU to monitor and advise students such as Plaintiff of the increased risks of harm and risk reduction methods.

234. At all relevant times, Defendants had a duty under Title IX to prevent and remedy any ongoing hostile educational environment (even one that exists off campus) if it has a continuing effect on campus.

235. Defendant ESU did not put adequate measures in place to protect Plaintiff from abuse or encounters with Defendant Burns despite its actual and/or constructive knowledge of the abuse.

236. Accordingly, Defendant ESU acted with deliberate indifference and acquiesced in Defendants Burns's misconduct.

237. Defendant ESU had knowledge that Defendant Burns abused Plaintiff and was arrested twice more for similar behavior unrelated to Plaintiff shortly after he assaulted her and while the investigation was ongoing.

238.    Defendant ESU, by and through its agents, servants, employees and/or ostensible agents,  failed to properly comply with its duties under federal, state, and local laws and ESU policies and procedures, undertook to render certain services, and assumed certain duties and obligations to Plaintiff but failed to exercise reasonable care and breached those duties, including but not limited to:

      a.  Creating an environment that facilitated sexual, physical, psychological, and emotional abuse by agents including Defendant Burns;

      b.  Permitting Defendant Burns to reside in a building directly across from Plaintiff after he was removed from her residence hall;

      c.  Performing excessively long investigations;

      d.  Permitting and/or allowing an environment in which Defendant Burns easily sexually, physically, psychologically, and emotionally abused Plaintiff;

      e.  Permitting and/or allowing an environment in which Defendant Burns easily engaged in illegal sexual conduct with Plaintiff on Defendant ESU's premises;

      f.  Permitting and/or allowing an environment in which Defendant Burns easily and repeatedly violated or engaged in conduct that would constitute violations of Pennsylvania criminal statutes prohibiting Rape (18 Pa. C.S.A. § 3121), and/or Involuntary Deviate Sexual Intercourse (18 Pa. C.S.A. § 3123), and/or Sexual Assault (18 Pa. C.S.A. § 3124.1), and/or Institutional Sexual Assault (18 Pa. C.S.A. § 3124.2), and/or Aggravated Indecent Assault (18 Pa. C.S.A. § 3125), and/or Indecent Assault (18 Pa. C.S.A. § 3126), and/or Assault (18 Pa. C.S.A. § 2701), and/or Aggravated Assault (18 Pa. C.S.A. § 2702), and/or Harassment (18 Pa. C.S.A. § 2709), and/or Terroristic Threats (18 Pa. C.S.A. § 2706), and/or Stalking (18 Pa. C.S.A. § 2709.1);

      g.  Refusing to allow Plaintiff to submit the additional information pertaining to Burns's two unrelated arrests during the time the investigation was open, though they were pertinent to her case as, upon information and belief, he assaulted two female members of his own family only three months after he assaulted Plaintiff;

h. Denying Plaintiff fair access to education programs and access and subjected her to great harm;

i. Providing misinformation to Plaintiff regarding the September 4, 2018 hearing, including telling her that she would be held in another room away from Defendant Burns and instead, calling Plaintiff into the same room as her assailant and the school members who were also attending the hearing in support of Defendant Burns, subjecting Plaintiff to severe and unnecessary humiliation, stress, and harassment;

j. Denying Plaintiff fair access to education programs;

k. Failing to appropriately respond to Plaintiff's appeal;

l. Failing to ensure Plaintiff's safety;

m. Violating the duties imposed by Restatement (Second) of Torts, §§ 302B, 314, 315, 317, 322, 323, 324A, 343, 344 and 371 and Restatement (Second) of Agency § 213 as adopted in Pennsylvania;

n. Failing to adopt, enforce and/or follow policies and procedures to protect student residents, like Plaintiff, against harmful influences and inappropriate, violent, and criminal contact by its RAs, including Defendant Burns;

o. Failing to properly and adequately supervise and discipline its agents to prevent the sexual, physical, psychological, and emotional abuse that occurred to Plaintiff;

p. Failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of Plaintiff, who attended Defendant ESU, and/or, in the alternative, failing to implement and comply with such procedures which had been adopted;

q. Failing to properly screen staff, like Defendant Burns, and other agents entrusted with protecting students;

r. Failing to properly investigate Plaintiff's sexual assault allegations and discipline the sexual assaulter;

s. Failing to provide safe campus housing accommodations for Plaintiff;

t. Failing to prohibit gender-based discrimination, harassment, and violence training in its educational programs and/or activities;

u. Failing to restrict Plaintiff's sexual assaulter's access to campus buildings;

v. Failing to prevent Plaintiff's sexual assaulter from having direct and indirect contact with her;

w. Failing to provide mental health services to Plaintiff;

x. Failing to refer Plaintiff for mental health services;

y. Failing to provide academic and counseling services to Plaintiff;

z. Failing to prevent acts of harassment, discrimination, and/or retaliation;

aa. Ratifying Defendant Burns's conduct;

bb. Exhibiting a pattern of vindictive and punitive treatment and course of action towards Plaintiff, and other similarly situated females and students, like Plaintiff;

cc. Failing to coordinate systemic resources, including but not limited to student mental health services, for the benefit of Plaintiff;

dd. Failing to exercise reasonable and necessary steps to prevent further harm after rendering Plaintiff in danger of further harm;

ee. Failing to recognize and appropriately respond to Plaintiff's psychological health and welfare, in light of her being a domestic violence and sexual assault survivor;

ff. Failing to prevent Plaintiff from suffering irreparable harm, given the totality of circumstances and ESU's undertakings as alleged herein;

gg. Failing to otherwise make reasonably safe the property which Defendant ESU possessed and/or controlled, leading to the harm of Plaintiff;

hh. Failing to adequately and properly train employees, servants, and/or agents including Defendant Burns regarding sexual, physical, psychological, and/or emotional abuse of students by RAs and/or employees and the red flags and/or warning signs of sexual, physical, psychological, and/or emotional abuse;

ii. Failing to take reasonable and necessary steps to rescue Plaintiff after placing her in a position of harm;

jj. Ignoring, concealing, or otherwise mitigating the seriousness of the known danger that Defendant Burns posed, thereby also increasing the risk to Plaintiff;

kk. Failing to take reasonable and necessary steps to prevent the delay in the appropriate care of Plaintiff; and

ll. Otherwise failing to adhere to any and all of ESU's policies and procedures.

239.   Defendant ESU exercised substantial control over Defendant Burns and the school environment in which the abuse and harassment occurred.

240.   Defendant ESU's conduct and violations of Plaintiff's guaranteed rights and benefits of education and protection caused her harm in the form of severe

emotional trauma, humiliation, loss of trust, frustration, anxiety, emotional pain and mental anguish, loss of enjoyment of life.

241.   The abuse and ongoing trauma suffered by Plaintiff was a direct result of the hostile environment maintained and perpetuated by Defendants and caused Plaintiff to be deprived of access to opportunities and benefits provided by the university.

242.   At no time did ESU advise, warn, or alert Plaintiff that she was at an increased risk of harm or of potential risk reduction methods.

243.   Defendant ESU's aforesaid negligence, carelessness, gross negligence, and reckless disregard for Plaintiff's safety was a substantial factor in causing and increasing the risk of harm.

244.   At the same time, the negligent, reckless, intentional, outrageous, deliberately, and recklessly indifferent and unlawful acts and omissions of Defendant Burns, as set forth above and herein, consisted of *inter alia*:

    a.    failing to enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of Plaintiff, who attended Defendant ESU, and/or, in the alternative, failing to implement and comply with such procedures which had been adopted;

    b.    failing to exercise reasonable and necessary steps to prevent further harm after rendering Plaintiff in danger of further harm;

    c.    failing to take reasonable steps to obtain aid or assistance for Plaintiff after rendering her in danger of further harm;

    d.    serving, obtaining, supplying, or otherwise furnishing alcohol to minors in violation of Pennsylvania law;

e.     failing to exercise due care under all circumstances;

f.     alternatively, concluding that Plaintiff consented to sexual activity under circumstances in which it was unreasonable to have reached that conclusion because of Plaintiff's resistance, inability to provide consent and/or incapacitation; and

g.     failing to come to the aid or rescues of Plaintiff after placing her in a perilous situation.

245.    As a proximate and direct result of Defendants' negligence and/or reckless conduct described herein, Plaintiff has suffered and will continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

246.    Plaintiff has and will likely, continue to be caused to incur medical expenses.

247.    Defendants knew or should have known about the severe risk of their failure to take any appropriate precautions outlined herein, and nevertheless acted with a conscious and/or reckless disregard for such risk for which Plaintiff is entitled to and hereby seeks punitive damages.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. Defendants

248.   Plaintiff incorporates herein by reference all paragraphs of this Complaint the same as if fully set forth hereinafter.

249.   Defendants' acts and omissions, as listed herein, were intentional and/or reckless.

250.   Defendants' acts and omissions, as listed herein, were extreme and outrageous and in reckless disregard for human life and safety.

251.   As a result of Defendants' acts and omissions, Plaintiff suffered severe emotional distress.

252.   As a result of Defendants' acts and omissions, Defendants caused Plaintiff severe emotional distress, pain and suffering that was a substantial factor in causing Plaintiff's injuries.

253.   In addition to the facts set forth herein, Defendant ESU's intentional or reckless and extreme and outrageous conduct, by and through its agents, servants, employees and/or ostensible agents, including Defendant Burns, disregarded the life, health, and safety of students, including Plaintiff, and consisted of but is not limited to:

      a. failing to prevent and/or take substantial, if any, steps to prevent the harm that befell Plaintiff;

      b. failing to properly and timely investigate Plaintiff's complaint of sexual assault;

c. permitting Defendant Burns to remain in contact with Plaintiff;

d. permitting Defendant Burns to have access to Plaintiff's dormitory and/or Plaintiff after the sexual assault;

e. permitting Defendant Burns to have access to campus buildings where Plaintiff resided, attended class, studied, and engaged in social and extracurricular activities;

f. permitting Plaintiff's sexual assaulter to remain on campus and/or engage in campus related activities where students were known to congregate;

g. failing to properly remove Plaintiff's sexual assaulter;

h. failing to provide safe campus housing accommodations for Plaintiff;

i. failing to provide academic support and other services to Plaintiff; and

j. otherwise failing to adhere to any and all of ESU's policies and procedures, as well as federal, state, and local laws.

254. It was reasonably foreseeable to Defendants that, as a sexual assault victim, Plaintiff was at an increased risk of harm and/or suffering injury.

255. It was reasonably foreseeable to Defendants that their conduct toward Plaintiff would result in harm to her.

256. It was reasonably foreseeable to Defendants that their conduct as described herein increased Plaintiff's risk of suffering injury.

257. Defendants' aforesaid negligence, carelessness, gross negligence, and reckless disregard for Plaintiff's safety was a substantial factor in causing and increasing the risk of harm that her injuries would occur.

258. Defendants, by and through their contact with Plaintiff as described herein, intentionally committed multiple acts of extreme and outrageous conduct which caused severe emotional, psychological, and psychiatric injuries, distress, and

harm to Plaintiff, which also manifested in physical injuries to Plaintiff as set forth above, in an extreme, outrageous, and harmful manner.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff v. Defendants

259.    Plaintiff incorporates herein by reference all paragraphs of this Complaint the same as if fully set forth hereinafter.

260.    Defendants had contractual and/or fiduciary duties towards Plaintiff.

261.    Defendants undertook gratuitously or for consideration to render certain services and assumed duties to Plaintiff to protect her and/or her educational investment.

262.    Defendants failed to exercise reasonable care in performing the services and duties below, and those failures increased the risks of harm to Plaintiff.

263.    Defendants failed to exercise reasonable care in performing the services and duties below, causing harm to Plaintiff because of her reliance on ESU.

264.    Defendants had a preexisting relationship with Plaintiff of providing certain services and assuming certain duties that obviously and objectively held the potential for deep emotional harm in the event of breach.

265.    There was a special relationship between Defendants and Plaintiff that included a duty of care for Plaintiff's physical, emotional and academic well-being.

266.  Plaintiff trusted, relied, and depended on Defendants to exercise fairness and good faith in dealing with Plaintiff and to refrain from using Defendants' positions to Plaintiff's detriment and/or to Defendants' advantage.

267.  Defendants knew or should have known that their acts and omissions involved an unreasonable risk of causing Plaintiff distress and knew or should have known that the distress might result in illness, and/or injuries.

268.  It was reasonably foreseeable that a person in Plaintiff's position would experience severe emotional damage from Defendants' misconduct as alleged herein.

269.  At all times relevant herein and upon information and belief, there were written policies, procedures, protocols, contracts, and agreements entered into by and between Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, and/or Plaintiff in which Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, were to provide certain services and assume certain duties to Plaintiff in exchange for financial consideration paid by or on behalf of Plaintiff.

270.  Upon information and belief, these written policies, procedures, protocols, contracts, and agreements outlined certain rights, responsibilities, obligations and duties of Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, related to Plaintiff's education at Defendant

ESU, including but not limited to her tuition, housing, other financial matters, security, mental and physical safety and medical treatment, health insurance and parental notifications.

271. Upon information and belief, these written policies, procedures, protocols, contracts, and agreements incorporated by reference certain written rules, guidelines and operating procedures of ESU, include but are not limited to ESU's Charter, Code of Student Conduct, Code of Academic Integrity and Policies and Procedures Handbook.

272. Upon information and belief, these contracts and agreements incorporated by reference certain written policies, procedures, protocols, contracts, and agreements of ESU.

273. At all times relevant herein, ESU had an obligation, duty, assumption of duty or promise to provide its students, including Plaintiff, an atmosphere that protects and promotes ESU's educational mission and which guarantees its orderly and effective operation.

274. At all times relevant herein, Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, had an obligation, duty, assumption of duty or promise to provide its students, including Plaintiff, an academic education in exchange for tuition.

275.   At all times relevant herein, Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, had an obligation, duty, assumption of duty or promise to provide its students, including Plaintiff, dormitories, and housing in exchange for payment.

276.   At all times relevant herein, Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, had an obligation, duty, assumption of duty or promise to provide its students, including Plaintiff, safe buildings, and a safe learning environment.

277.   At all times relevant herein, Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, had an obligation, duty, assumption of duty or promise to provide its students, including Plaintiff, medical treatment, and services for physical and mental injuries.

278.   At all times relevant herein, Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, had an obligation, duty, assumption of duty or promise to refer its students, including Plaintiff, for mental health services.

279.   Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, failed to adequately uphold and adhere to the terms of the contracts and agreements and breached those terms.

280. Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, unintentionally caused emotional distress to Plaintiff and are liable for her resulting injuries.

281. Defendant ESU's, acts and omissions, including but not limited to herein facts, and those of and its agents, servants, and/or employees, like Defendant Burns, constitute negligence.

282. As a result of Defendant ESU's, and its agents, servants, and/or employees, like Defendant Burns, acts and omissions, Defendants caused Plaintiff severe emotional distress, pain and suffering and physical pain, suffering and other injuries.

283. It was reasonably foreseeable to Defendants that Plaintiff was at an increased risk of harming herself.

284. It was reasonably foreseeable to Defendants that its conduct toward Plaintiff would result in injury to her.

285. It was reasonably foreseeable to Defendants that its conduct as described herein increased the risk of harm to Plaintiff.

286. The aforesaid negligence, carelessness, gross negligence, and reckless disregard for Plaintiff's safety by Defendant ESU, and its agents, servants, and/or employees, like Defendant Burns, was a substantial factor in causing and increased the risk of harm and her injuries.

287.   As a result of the above-described conduct, Plaintiff has suffered and will continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, PTSD, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### COUNT VI
### NEGLIGENT HIRING, TRAINING, SUPERVISION, RETENTION AND COORDINATION OF RESOURCES OF EAST STROUDSBURG UNIVERSITY
**Plaintiff v. Defendant East Stroudsburg University of Pennsylvania**

288.   Plaintiff incorporates herein by reference all paragraphs of this Complaint the same as if fully set forth hereinafter.

289.   At all times relevant herein, Defendant ESU's employees, including Defendant Burns, acted within the scope of their authorities and employments as agents, officers and/or employees of ESU.

290.   Defendant ESU failed to exercise reasonable care in its hiring, training, supervision, and retention of its employees, specifically those staff in the Residential Department.

291.   Defendant ESU knew or should have known that its employees were dangerous, careless, incompetent, inadequately trained and monitored, and that its employment could foreseeably lead to the harm of a third person.

292.   Defendant ESU knew or should have known that its university was decentralized and lacked systematic coordination of its resources, making it difficult and/or not possible for Defendant ESU's employees to properly protect, educate and intervene when students have sexual, emotional, mental health, drug and alcohol, academic, misconduct, housing, and/or financial problems.

293.   Defendant ESU knew or should have known that its university structure could foreseeably lead to the harm of its students, as harm befell its students in a substantially similar way at least several times before.

294.   At all times relevant herein, it was reasonably foreseeable to Defendant ESU that its employees, including but not limited to those listed above, would be confronted with situations similar to those involving Plaintiff. It was reasonably foreseeable to Defendant ESU that:

> a. students may be sexually assaulted;
> b. employees would conduct sexual assault investigations and determine punishment;
> c. student-sexual assault victims need special housing accommodations;
> d. student-sexual assault victims need mental health services;
> e. employees would have to determine under what circumstances to refer students for mental health services and counseling;
> f. employees would have to determine where to refer students for mental health services and counseling;
> g. employees would investigate allegations of academic or other misconduct and determine punishment;
> h. employees would have to determine housing arrangements for students facing academic or misconduct investigations; and
> i. employees would have to abide by all federal, state, and local laws.

295. Defendant ESU caused, developed, created, instituted and/or maintained certain policies and procedures for the university.

296. Defendant ESU's negligence, by and through its agents, servants, employees and/or ostensible agents, consisted of but is not limited to either not having policies and procedures; establishing inadequate policies and procedures; failing to follow established policies and procedures; changing policies and procedures; failing to train and supervise employees in how to follow policies and procedures; failing to recognize clear indicia of abuse; and/or failing to train and supervise employees about the changes in its policies and procedures.

297. It was reasonably foreseeable to Defendant ESU that, as a domestic violence and sexual assault victim, Plaintiff was at an increased risk of harm.

298. It was reasonably foreseeable to Defendant ESU that its acts and omissions would cause harm to Plaintiff.

299. It was reasonably foreseeable to Defendant ESU that its conduct as described herein increased the risk of harm to Plaintiff.

300. ESU's aforesaid negligence, carelessness, gross negligence, and reckless disregard for Plaintiff's safety and was a substantial factor in causing and increasing the risk of harm to Plaintiff.

## COUNT VII
## RAPE, SEXUAL ASSAULT
### Plaintiff v. Burns

301. Plaintiff incorporates herein by reference all paragraphs of this Complaint the same as if fully set forth hereinafter.

302. On the early morning hours of March 30, 2018, Defendant Burns intentionally committed a violent rape and sexual assault on Plaintiff multiple times in a residence hall by forcibly penetrating her vagina with his penis against her will and without her consent, thereby violating several tortious, criminal and/or statutory laws of the state of Pennsylvania, including but not limited to: Assault, Battery; Indecent Assault, pursuant to Title 18 § 3126; Sexual Assault, pursuant to Title 18 § 3124.1; Rape, pursuant to Title 18 § 3121; Aggravated Indecent Assault, pursuant to Title 18 § 3125; Indecent Exposure, pursuant to Title 18 § 3127; Involuntary Deviate Sexual Intercourse, pursuant to Title 18 § 3123; Simple Assault, pursuant to Title 18 § 2701; Aggravated Assault, pursuant to Title 18 § 2702.

303. Burns raped and assaulted Plaintiff causing psychological injuries that she continues to suffer from today.

304. Burns committed these acts on Plaintiff who did not and could not consent to these sexually depraved acts.

61

305.   By reason of the egregious and inhumane conduct of Burns in raping and sexually assaulting Plaintiff, she sustained the devasting and permanent injuries described herein.

**COUNT VIII**
**ASSAULT AND BATTERY**
**Plaintiff v. Defendants**

306.   Plaintiff incorporates herein by reference all paragraphs of this Complaint the same as if fully set forth hereinafter.

307.   From 2016 to 2018, Burns frequently physically, emotionally, and psychologically abused Plaintiff throughout their relationship.

308.   On the early morning hours of March 30, 2018, Burns sexually and physically assaulted and battered Plaintiff in the following ways:

a.   Defendant Burns forcibly pushed Plaintiff to the ground;

b.   Defendant Burns pinned Plaintiff down the ground by violently holding her wrists, which caused swelling, redness, and bruising;

c.   Defendant Burns aggressively screamed in Plaintiff's face several times, causing her to become emotionally distressed and fearful of agitating Burns further;

d.   Defendant Burns raped her twice;

e.   Defendant Burns ripped Plaintiff's shirt straps; and

f.   Committing the crimes referenced herein, including but not limited to Assault, Battery; Indecent Assault, pursuant to Title 18 § 3126; Sexual Assault, pursuant to Title 18 § 3124.1; Rape, pursuant to Title 18 § 3121; Aggravated Indecent Assault, pursuant to Title 18 § 3125; Indecent Exposure, pursuant to Title 18 § 3127; Involuntary Deviate Sexual Intercourse, pursuant to Title 18 § 3123; Simple Assault, pursuant to Title 18 § 2701; Aggravated Assault, pursuant to Title 18 § 2702.

309.  Thus, the actions of Burns during the course and scope of his tenure as an RA resulted in harmful or offensive contact with Plaintiff.

310.  Burns's behavior on March 30, 2018 was not isolated or atypical for him.

311. His behavior was offensive such that it would offend a reasonable person's personal sense of dignity.

312. The unlawful contact with Defendant Burns took place on Defendant ESU's premises owned, operated, and/or maintained by Defendant ESU while Burns was an employee of Defendant ESU, actively working, and within the scope of his employment as an RA.

313. Burns used his status of authority and power, granted to him, by way of his status as an RA with ESU, to unlawfully enter Plaintiff's room and force her to engage in nonconsensual sexual acts.

314. Prior to, or during the sexual abuse alleged above, Defendant ESU knew or should have known, of the abusive sexual tendencies of Burns herein referenced and/or the opportunity for Defendant ESU employees and/or staff to abuse their power or authority over other residents, such as Plaintiff, in furtherance of perpetrating unlawful sexual acts and/or the opportunity for sexual abuse of a resident, like Plaintiff, to occur on campus premises.

315. The two years that Burns and Plaintiff shared a relationship were littered with, *inter alia*, domestic violence, emotional abuse, sexual assault, rape, psychological abuse, threats, manipulation, and control.

316. Thus, all instances described herein are part of a continuous pattern of misconduct resulting directly from Defendant ESU and Defendant Burns's negligence, acts, omissions, and other conduct as described herein.

317. Defendant Burns had a history of excessive and/or underage drinking.

318. Defendant Burns had a reputation for becoming easily agitated, particularly when he was intoxicated.

319. Defendant Burns was often seen punching windows, starting fights, ripping his shirt off, and engaging in other violent and aggressive behaviors.

320. Additionally, others witnessed Defendant Burns physically assault Plaintiff on various occasions.

321. Defendant ESU failed to take reasonable steps and failed to implement reasonable safeguards to prevent, eliminate, and/or avoid acts of unlawful sexual conduct by Defendant Burns and Defendant ESU is vicariously liable for the egregious conduct of Burns.

322. Furthermore, at all times relevant hereto, Defendant ESU did not have a system or procedure in place to appropriately supervise and/or monitor its employees

to ensure that its employees did not sexually assault residents including, but not limited to -Plaintiff.

323. As   a result of Defendants' conduct outlined herein, Plaintiff was violated and forced to undergo vile atrocious acts of sexual abuse and as a result have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; distrust, anxiety, and distress related to authority figures; depression, nightmares, nervousness, stress, and/or other trauma; mental anguish, sexual dysfunction, embarrassment, insomnia, fear, PTSD, flashbacks; loss of self-worth; and other emotional distress; were prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling; and mental injuries presently and which may be diagnosed in the future.

324. Plaintiff's injuries were not caused by Plaintiff in any part.

325. Because of the grossly negligent, reckless, wanton, and outrageous conduct as set forth herein, Plaintiff is entitled to punitive damages.

## DEMAND FOR JURY

PLEASE TAKE NOTICE that the Plaintiff hereby demands a jury trial as to all of the within issues.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants East Stroudsburg University of Pennsylvania and Victor Burns, jointly and severally, in an amount to be determined at trial plus interest, including but not limited to all compensatory damages, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs; and for such other relief as this Honorable Court deems just and proper.

SALTZ, MONGELUZZI & BENDESKY, P.C.

BY: ___*Marni S. Berger*_____
ROBERT MONGELUZZI, ESQUIRE
ANDREW DUFFY, ESQUIRE
MARNI SABRINA BERGER, ESQUIRE
*Attorneys for Plaintiff*

Date: October 25, 2022

## VERIFICATION

I, ██████████████, hereby verify that the facts set forth in the within Complaint are true and correct to the best of my knowledge, information and belief.  This Verification is made subject to the penalties of the 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

DATED:  10/14/2022